Honorable Mary Figg Representative
QUESTION:
1. Does s. 119.16, F.S., allow the governing board of a public hospital to close a meeting at which the public hospital's budget is discussed, if the claim is made that the budget is a trade secret, as defined in s. 688.002, F.S., or is part of a marketing plan?
2. Does the exemption from s. 119.07(1), F.S., for trade secrets and marketing plans allow a public hospital to exempt from Ch.119, F.S., any part of that hospital's budget document on the grounds that the budget itself is a trade secret or is part of a marketing plan?
SUMMARY:
1. Section 119.16, F.S., does not allow a public hospital to close a meeting at which the public hospital's budget is discussed even though a claim is made that the budget is a trade secret or part of a marketing plan; only the negotiations of contracts with nongovernmental entities for the payment of services provided by the hospital are exempt from s. 286.011, F.S.
2. While the budget of a public hospital would not, in and of itself, appear to constitute either a trade secret or marketing plan, there may be instances where, because of the breadth of the exemptions contained in s. 119.16(3)(c) and (d), F.S., information contained in or attached to the budget may be exempt from disclosure under those provisions. It, therefore, may be advisable for the Legislature to reexamine this matter and clarify the parameters of the exemptions provided in s. 119.16, F.S.
AS TO QUESTION 1:
Section 286.011, F.S., the Government in the Sunshine Law, requires that meetings of public boards or commissions in this state be open to the public.[1] Section 119.16(1), F.S., provides that the meetings of the governing body of a public hospital, as well as its records, shall be open to the public in accordance with s. 286.011 and Ch. 119, F.S., unless made confidential or exempt by law.
Pursuant to s. 119.16(2)(a), F.S., the negotiations of contracts with nongovernmental entities for the payment of services provided by a hospital are exempt from s. 286.011, F.S., when such negotiations concern services that are or may reasonably be expected by the hospital's governing board to be provided by the hospital's competitors. Subsection (2)(b) of the statute creates an exemption from s. 119.07(1), F.S., for the documents, offers, and contracts that are the product of such negotiations. The negotiations and records listed in subsection (2)(a) and (b), however, become subject to ss. 119.07(1) and 286.011, F.S., thirty days prior to the meeting at which the hospital's governing board is scheduled to vote whether to accept, reject, or modify such documents, contracts, or offers.
Section 119.16(3), F.S., creates an exemption from s. 119.07(1), F.S., for certain records of a public hospital. Such exemption includes documents revealing a hospital's plans for marketing the hospital's services, which services may reasonably be expected to be provided by the hospital's competitors, as well as documents that reveal trade secrets.[2] The exemption created in s. 119.16(3), F.S., however, is an exemption from the disclosure requirements of the Public Records Law, not the Government in the Sunshine Law.
As the Legislature made clear in 1991 in amending s. 119.07(5), F.S.:
 An exemption from [s. 119.07] does not imply an exemption from or exception to s. 286.011. The exemption from or exception to s. 286.011 must be expressly provided.[3]
Therefore, the exemption from s. 119.07(1), F.S., contained in s. 119.16(3), F.S., for trade secrets does not constitute an exemption from s. 286.011, F.S. The only exemption from the Sunshine Law provided by s. 119.16, F.S., is for the negotiations with nongovernmental entities for the payment of services provided by the hospital when such negotiations concern services which may reasonably be expected to be provided by the hospital's competitors. The exemption, which is of limited duration, would not appear to be generally applicable to meetings of the governing body to discuss the public hospital's budget.
AS TO QUESTION 2:
Chapter 119, F.S., mandates that the records of public agencies be open for public inspection.[4] As discussed in Question One, s. 119.16(1), F.S., provides that the records, books, documents, and papers of a public hospital shall be open and available to the public in accordance with Ch. 119, F.S., unless made confidential or exempt by law. The statute, however, does create several exemptions from the disclosure requirements of s.119.07(1), F.S.
Pursuant to s. 119.16(3)(c) and (d), F.S., the following documents are confidential and exempt from s. 119.07(1), F.S.:
(c) Documents that reveal a hospital's plans for marketing the hospital's services which services are or may reasonably be expected by the hospital's governing board to be provided by competitors of the hospital. (d) Documents that reveal trade secrets as defined in s. 688.002.[5]
The exemptions provided by s. 119.16, F.S., cease if the board votes to lease, sell, or transfer all or any substantial part of the facilities or property of the hospital.[6]
"Trade secret" is defined in s. 688.002(4), F.S., to mean:
[I]nformation, including a formula, pattern, compilation, program, device, method, technique, or process that:
(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
The above definition is identical with the definition for trade secrets contained in the Uniform Trade Secrets Act which has been adopted by a majority of jurisdictions.[7] The precise determination as to whether certain information constitutes a trade secret is a question of fact or mixed question of law and fact, which this office cannot resolve.[8] Generally, however, to qualify as a trade secret, the information must be sufficiently secret and derive economic value, both to its owner and to competitors because of the information's relative secrecy, and the information must be the subject of reasonable efforts to maintain its secrecy.[9]
Exemptions from the Public Records Law are to be narrowly construed and limited to their intended purpose.[10] An examination of the legislative history surrounding the enactment of s. 119.16, F.S., indicates that the purpose of the legislation was to provide a narrow exemption to the public records and public meetings laws to protect information which, if revealed to competitors of the public hospitals, would provide the competitors with an unfair business advantage.[11] I find nothing in the legislative history, however, which indicates that the Legislature intended to exempt the budget of a public hospital as either a trade secret or a marketing plan. In addition, the importance of allowing the public to participate in the development of a multimillion dollar budget of a public hospital has been recognized by the courts.[12] In light of the above, it is probable, therefore, that a court would not broadly construe the exemption provided in s. 119.16, F.S.[13]
This office has not been provided with any specific facts or details regarding the information contained in a hospital's budget. While it would not appear that the budget of a public hospital in and of itself would constitute either a trade secret or a marketing plan, there may be instances, because of the breadth of the exemptions contained in s. 119.16(3)(c) and (d), F.S., where information contained in or attached to the budget might be exempt from disclosure under those provisions. You refer, for example, to an analysis of satellite operations of the hospitals or details of certain specialized programs of the hospital.
There may be occasions where the information contained therein might reveal the hospital's plans for marketing the hospital's services which services reasonably could be expected to be provided by the hospital's competitors. Under the language contained in s. 119.16(3)(c), F.S., such information could be exempt from disclosure.
In light of the above, it would appear to be advisable for the Legislature to reexamine this matter and clarify the parameters of the exemptions provided in s. 119.16, F.S.
RAB/tjw
[1] See, s. 286.011(1), F.S., stating that "[a]ll meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation, or political subdivision . . . at which official acts are to be taken are declared to be public meetings open to the public at all times . . . ."
[2] Section 119.16(3)(c) and (d), F.S.
[3] See, s. 1, Ch. 91-219, Laws of Florida. Cf., AGO's 91-45 and 91-75, stating that exemptions from the Public Records Law do not carry over to the Sunshine Law.
[4] See, s. 119.07(1), F.S., requiring the custodian of public records to permit the record to be inspected by any person desiring to do so, at any reasonable time, under reasonable conditions, and under the supervision of the custodian or his designee.
[5] Section 3, Ch. 91-219, Laws of Florida, referenced to s. 688.022, F.S., which does not exist. Statutory revision substituted s. 688.002, F.S., which defines "trade secret."
[6] Section 119.16(4), F.S.
[7] See, s. 1 of the Uniform Trade Secrets Act. Andsee, 19C F.S.A. Supp. Ch. 668 at p. 106-107, listing the adopting jurisdictions.
[8] Cf., Network Telecommunications, Inc. v. Boor-Crepeau, 790 P.2d 901 (Colo.App. 1990) (what constitutes a trade secret protected by the Uniform Trade Secrets Act is a question of fact for the trial court); Saunders v. Florence Enameling Company, Inc., 540 So.2d 651 (Ala. 1988).
[9] See generally, Templeton v. Creative Loafing Tampa, Inc., 552 So.2d 288 (2 D.C.A. Fla., 1989), stating that a list of potential advertisers did not qualify as a trade secret entitled to injunctive protection since the lists were not shown to be a product of great expense or effort and were not distillations of larger lists, nor did they include information not available from public sources. Cf., Gillis Associated Industries, Inc. v. Cari-All, Inc., 564 N.E.2d 881 (Ill.App. 1st 1990), appeal denied, 571 N.E.2d 147 (Ill. 1991); Robert S. Weiss and Associates, Inc. v. Wiederlight, 546 A.2d 216 (Conn. 1988) (factors to be used in determining whether information constitutes a trade secret is the extent to which the information is known outside of the business and by employees and others involved in the business, the measures taken by the employer to guard the secrecy of the information, the value of the information to the employer and his competitors, the resources the employer expends in developing the information and the ease or difficulty with which the information could be properly acquired or duplicated by others).
[10] See generally, Seminole County v. Wood,512 So.2d 1000 (5 D.C.A. Fla., 1987), pet. for rev. den., 520 So.2d 586
(Fla. 1988); Tribune Company v. Public Records, 493 So.2d 480 (2 D.C.A. Fla., 1986), pet. for rev. den. sub nom., Gillum v. Tribune Company, 503 So.2d 327 (Fla. 1987); Bludworth v. Palm Beach Newspapers, Inc., 476 So.2d 775 (4 D.C.A. Fla., 1985),pet. for rev. den., 488 So.2d 67 (Fla. 1986).
[11] See, Bill Analysis and Economic Impact Statement on CS/HB 1719, Committee on Governmental Operations, Florida House of Representatives, dated June 4, 1991. And see, Ellsworth v. Insurance Company of North America, 508 So.2d 395 (1 D.C.A. Fla., 1987) (appellate courts may consider staff summaries in construing statutes); 82 C.J.S. Statutes s. 356.
[12] See, e.g., News-Press Publishing Company, Inc. v. Carlson, 410 So.2d 546, 548 (2 D.C.A. Fla., 1982), holding that the preponderant interest in allowing public participation justified the inclusion of the budget committee within the provisions of the Government in the Sunshine Law.
[13] Cf., Warden v. Bennett, 340 So.2d 977 (2 D.C.A. Fla., 1976), recognizing that the exemption afforded by s.447.605(3), F.S., for work products developed by the public employer in preparation for collective bargaining negotiations did not remove the working papers used in preparing a community college's budget from disclosure.