# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 133

OCTOBER TERM, A.D. 2025

December 15, 2025

TIMOTHY HALE and SONJA RINGEN,

Appellants
(Defendants),

v.

CITY OF LARAMIE, a body corporate and
political subdivision of the State of Wyoming,

Appellee
(Plaintiff).

S-25-0095

*Appeal from the District Court of Albany County*
*The Honorable Misha E. Westby, Judge*

*Representing Appellant:*
Mitchell H. Edwards, Nicholas & Tangeman, LLC, Laramie, Wyoming. Argument by Mr. Edwards.

*Representing Appellee:*
Holli Austin-Belaski and Robert Southard, City of Laramie Attorney Office, Laramie, Wyoming. Argument by Ms. Austin-Belaski.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL, Justice.**

[¶1]   Timothy Hale and Sonja Ringen (Hale/Ringen) began constructing a storage building on their property in Laramie without obtaining a building permit. The City of Laramie (the City) initiated an action seeking an injunction to prevent Hale/Ringen from finishing and using the building until it was properly permitted. The district court granted an injunction and set out steps to bring the building into compliance with the applicable regulations. However, after considerable time and multiple attempts to obtain a building permit, the City refused to issue a permit. Hale/Ringen eventually filed multiple motions to have the injunction vacated or modified. The district court denied the final motion. Hale/Ringen appeal. Finding the district court abused its discretion, we reverse.

**ISSUE**

[¶2]   Hale/Ringen raise one issue which we rephrase as:

Did the district court abuse its discretion when it denied Hale/Ringen's motion to dissolve or modify the injunction?

**FACTS**

[¶3]   Hale/Ringen own property within the City. The Hale/Ringen property consists of adjacent lots and is zoned "general commercial." Hale/Ringen operate their business, Specialized Welding and Machine, on a portion of their property. In 2019, Hale/Ringen began construction of a storage building on a different portion of their property. The building has no plumbing, sewer, or HVAC.

[¶4]   In September of 2019, before the structure was complete, the City discovered the construction and issued Hale/Ringen a stop work order followed by a cease-and-desist letter to halt the construction. The City informed Hale/Ringen they would need to obtain a building permit. Hale/Ringen did not cease construction but did apply for a building permit. The City informed Hale/Ringen that the application was deficient. Discussions and correspondence between Hale/Ringen and the City about their application for a building permit and building code violations continued through the end of 2019. At times, the City visited the property and took photographs.

[¶5]   Hale/Ringen filed a second permit application in November of 2019. This application was also denied "for the reason that [Hale/Ringen] had not initialed next to the promise to not begin work prior to being given the permit." Hale/Ringen asserted they could not initial this part of the application because construction had already began. Following this denial, Hale/Ringen did not continue additional work on the structure for a period of time.

1

[¶6]   In March of 2020, the City filed an action for injunctive relief in the district court. The parties engaged in discovery, and the court ordered an inspection of the property, which was conducted on September 14, 2020.  It is unclear in the record exactly when, but at some point, Hale/Ringen completed construction of the storage building.  Hoping to resolve the matter without a trial, in April of 2021, the court ordered the parties to engage in mediation.  The mediation was unsuccessful.

[¶7]   In May of 2022, the district court conducted a bench trial.  Following the trial, the district court entered an order granting an injunction.  The court specifically found:

> law, justice, and equity require the imposition of a permanent injunction to require [Hale/Ringen] to stop using the building, to stop work thereon, to allow investigation and inspection of the building in an effort to bring the property into full compliance with the legal requirements, including, if absolutely necessary, disassembly of components thereof.  It is the Court's hope, however, that compliance can be achieved without disassembly of the structure.

The court also stated that it was enjoining Hale/Ringen "from utilizing or working on the storage building . . . until such time as [Hale/Ringen] obtain all permits required by the City of Laramie."

[¶8]   The court further ordered the parties to engage in a process for additional inspections, the identification of any safety and building code violations, and the performance of any modifications or repairs to correct any violations found.  Hale/Ringen were to resubmit an application for a building permit.  The outlined process was to be completed in approximately 130 days.

[¶9]   Unfortunately, the process did not go smoothly because the relationship between the parties is highly contentious.  Without including irrelevant details, it would be fair to characterize the significant point of conflict as the City requesting disassembly or demolition of all or parts of the storage building and Hale/Ringen objecting to those requests.  The parties' disagreements led to more court filings including Hale/Ringen's notice of the City's failure to provide specific and reasonable requests, and the City's motion for an order to show cause.

[¶10]  On February 3, 2023, after an evidentiary hearing, the court denied the motion for an order to show cause.  The court observed both parties "failed to fully comply with certain requirements and procedures set forth in the Order Granting Injunction."  The court again directed the parties to re-engage in a process to try to remedy the lack of a building permit.

[¶11]  Until October of 2023, the parties engaged in more correspondence and another failed inspection attempt.  During this time, Hale/Ringen provided the City with

construction sequence photos, engineering drawings and reports, contractor information and receipts, and other information. Still no building permit was issued.

[¶12]  At the end of November 2023, the City filed a motion for compliance with the injunction asserting that Hale/Ringen had failed to comply with the court's orders or work in good faith towards permitting the building and requested additional remedies. In response, Hale/Ringen argued the City's filing sought to modify the original injunction order and was therefore deficient for not attaching affidavits or other evidence. Hale/Ringen also filed a motion to vacate the injunction asserting it was no longer equitable to maintain the injunction. Their motion attached numerous exhibits, including the declaration of a licensed professional engineer, numerous construction photos, city inspection photos, engineering drawings, contractor invoices, and the other documents Hale/Ringen had submitted to the City with their permit applications.

[¶13]  After a hearing in early 2024, the district court entered an order regarding both motions without specifically granting or denying either. The court again refused to order disassembly of the structure. The court also recognized the time and expense Hale/Ringen incurred in an attempt to remedy their initial failure to get a permit. The court ordered another process for the parties to engage in to resolve the injunction and set out specific timeframes. Perhaps recognizing the parties were unable to get along, the new process included more court involvement. The court once more ordered the City to inspect the building and make a list of code violations and requested remedies. The court would then determine if the requested remedies were reasonable and Hale/Ringen would be required to perform any remedies the court determined were reasonable. The court specifically stated "[i]f the City does not find any violations, the permanent injunction granted by this court in its Order Granting Injunction will be lifted specifically as to [Hale/Ringen's] use of the property."

[¶14]  The deadline for the City to conduct its inspection was not met, so Hale/Ringen again requested that the district court vacate the injunction. The district court ordered the parties to meet in person to discuss the code violations, if any, and that the City would be allowed to file with the court a "detailed itemization of any missing or insufficient documentation for permitting, including any and all known items that prevent the City from issuing permits." The City filed its notice of deficiencies on September 20, 2024. The City asserted "permitting is not possible without the previously requested demolition, dismantling, uncovering and disassembly of the structure and other specified items to allow full and proper inspections." Hale/Ringen responded, and the district court set a hearing for March 4, 2025.

[¶15]  The order setting the hearing included filing deadlines and required the City to file "[a] numbered list of each specific remaining violation with the property and structure and why the listed item is in violation of city code, including a citation to the specific city code provision." The City filed a lengthy list of violations but did so without any declarations,

3

affidavits, or other evidence attached. Hale/Ringen responded and again asked the court to vacate the injunction.

[¶16] The court never held the March 4, 2025, hearing and instead issued an order denying both the City's motion for compliance with the injunction and Hale/Ringen's motion to vacate the injunction. In terms of a reason for the denials, the order simply stated "finding that the parties have not reached any agreement, IT IS THEREFORE HEREBY ORDERED: the motions are DENIED."

[¶17] Hale/Ringen appeal and argue the district court abused its discretion when it did not review the evidence they submitted and denied the motion to vacate the injunction simply because the parties were not in agreement. Hale/Ringen also invite this Court to remand this matter to the district court with instructions that the court enter an order dissolving the injunction.

## STANDARD OF REVIEW

[¶18] "Injunctions are 'requests for equitable relief which are not granted as a matter of right but are within the lower court's equitable discretion.'" *Winney v. Jerup*, 2023 WY 113, ¶ 13, 539 P.3d 77, 82 (Wyo. 2023) (quoting *Olsen v. Kilpatrick*, 2007 WY 103, ¶ 9, 161 P.3d 504, 507 (Wyo. 2007)). District courts exercise broad discretion over requests for equitable relief. *Harber v. Jensen*, 2004 WY 104, ¶ 8, 97 P.3d 57, 60 (Wyo. 2004) (citing *Wilson v. Lucerne Canal and Power Co.*, 2003 WY 126, ¶ 9, 77 P.3d 412 (Wyo. 2003)). Because the district court's decision is discretionary, we review decisions related to injunctions for an abuse of discretion. *Operation Save Am. v. City of Jackson*, 2012 WY 51, ¶ 18, 275 P.3d 438, 447 (Wyo. 2012) (citing *In re Kite Ranch, LLC v. Powell Fam. of Yakima*, LLC, 2008 WY 39, ¶ 21, 181 P.3d 920, 926 (Wyo. 2008)); see also *United States v. McVeigh*, 157 F.3d 809, 814 (10th Cir. 1998) (applying an abuse of discretion standard to decisions to modify an injunction). We also apply the abuse of discretion standard to our review of the district court's rulings on motions brought under Wyoming Rule of Civil Procedure (W.R.C.P.) 60(b). *Olson v. Schriner*, 2020 WY 36, ¶ 15, 459 P.3d 453, 458–59 (Wyo. 2020) (quoting *SWC Production, Inc. v. Wold Energy Partners, LLC*, 2019 WY 95, ¶ 5, 448 P.3d 856, 858 (Wyo. 2019)).

[¶19] "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Cornell v. Mecartney*, 2025 WY 97, ¶ 15, 575 P.3d 349, 353 (Wyo. 2025) (citation omitted) "A court abuses its discretion if it acts 'in a manner which exceeds the bounds of reason under the circumstances.'" *Id.* (quoting *Gardels v. Bowling*, 2023 WY 3, ¶ 7, 522 P.3d 1047, 1052 (Wyo. 2023)).

## DISCUSSION

4

[¶20]   Hale/Ringen brought their motion to vacate the injunction under W.R.C.P. 60(b)(5) and (b)(6).  In relevant part, Rule 60 allows parties to obtain relief from a judgment or order if "applying it prospectively is no longer equitable," or "any other reason that justifies relief."  W.R.C.P. 60(b)(5) and (b)(6).  Wyoming Rule of Civil Procedure 60(b) is identical to federal Rule 60; thus, it is appropriate to look to the federal courts for guidance.  *Meiners v. Meiners*, 2019 WY 39, ¶ 17, 438 P.3d 1260, 1268 (Wyo. 2019).  When discussing Federal Rule of Civil Procedure 60(b)(5), the United States Supreme Court has acknowledged the rule allows a party to obtain relief from an order when prospective application of that order is no longer equitable.  *Horne v. Flores*, 557 U.S. 433, 447, 129 S. Ct. 2579, 2593, 174 L. Ed. 2d 406 (2009) (considering an injunction).  The relief sought may include modifying or vacating a permanent injunction.  *Equal Emp. Opportunity Comm'n v. UPS Ground Freight, Inc.*, 344 F. Supp. 3d 1256, 1262 (D. Kan. 2018) (citation omitted).

[¶21] Generally, Rule 60(b) is not the appropriate means to challenge the legal conclusions on which the original order rests, but the rule provides a mechanism to ask a court to modify or vacate the order if there has been a significant change in either the factual conditions or the law since the order and those changes warrant modification.  *Horne*, 557 U.S. at 447 (citing *Rufo* v. *Inmates of Suffolk County Jail*, 502 U.S. 367, 384, 112 S. Ct. 748, 116 L. Ed. 2d 867 (1992)); *see also Gunsch v. State*, 2019 WY 79, ¶ 14–15, 444 P.3d 1278, 1282 (Wyo. 2019) (discussing the appropriateness of using Rule 60(b) to correct legal errors and mistakes when the motion is not to avoid appellate time limits).  Examples of changed factual circumstances that may warrant modification include when the injunction proves to be unworkable because of unforeseen circumstances, the changed circumstances make compliance with the injunction substantially more onerous than originally anticipated, or enforcement of the injunction without modification would be detrimental to the public interest.  *Equal Emp. Opportunity Comm'n*, 344 F. Supp. 3d. at 1262–1263 (citations omitted).

[¶22]  "The party seeking relief bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court abuses its discretion when it refuses to modify an injunction . . . in light of such changes."  *Horne*, 557 U.S. at 447 (citing *Agostini v. Felton*, 521 U.S. 203, 215, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997)) (citation modified).  This court has also discussed that when a party makes a Rule 60(b) motion, it is the movant's burden to argue his circumstances fit the grounds for relief and to substantiate these claims with adequate proof.  *Olson v. Schriner*, ¶ 15, 459 P.3d at 458–59  (citing *Painovich v. Painovich*, 2009 WY 116, ¶ 5, 216 P.3d 501, 503 (Wyo. 2009)).

[¶23]  To carry this burden, Hale/Ringen chiefly argued that despite their significant efforts to follow the court's orders and remedy their failure to obtain a building permit, the City does not intend to issue them a building permit.  Hale/Ringen supported their motion

with exhibits, including the declaration of a licensed professional engineer, numerous construction photos, city inspection photos, engineering drawings, contractor invoices, and other documents. Hale/Ringen argued these exhibits show the building does not violate the building code, other than the failure to obtain the building permit before construction, or present a risk to safety and welfare. The City responded with arguments of its own listing various code violations but did not support its argument with similar evidence or affidavits.

[¶24] From the record, it does not appear the district court considered or based its decision on either the arguments or the submitted materials. Instead, the district court order indicates the court denied the motion because the parties "have not reached any agreement." The order provides no further analysis of the evidence submitted or the arguments presented. The order does not show the court considered whether applying the injunction "prospectively is no longer equitable" or whether "any other reason that justifies relief" existed and then exercised its discretion to deny the motion. W.R.C.P. 60(b)(5) and (b)(6). Without more, the order does not show that the district court exercised any judicial discretion in deciding the matter. Instead, it appears the court refused to consider and decide the matter on the evidence presented by the parties. It is an abuse of discretion and constitutes reversible error to fail to exercise any discretion. *Steele v. Neeman*, 6 P.3d 649, 655 (Wyo. 2000); *see also, In re Est. of Johnson*, 2010 WY 63, ¶ 19, 231 P.3d 873, 881 (Wyo. 2010) (citing *Carroll v. Law*, 2005 WY 44, ¶ 6, 109 P.3d 544, 546 (Wyo. 2005); *Steele v. Steele,* 2005 WY 33, ¶ 11, 108 P.3d 844, 848 (Wyo. 2005); *Martin v. State*, 720 P.2d 894, 897 (Wyo. 1986)).

[¶25] We have stated that when exercising its discretion, "the district court must determine each case on its peculiar facts, and must consider all of the circumstances before it." *In re Est. of Johnson*, ¶ 19, 231 P.3d at 881 (citing *Shepard v. State*, 720 P.2d 904, 905 (Wyo. 1986); *Gale v. State*, 792 P.2d 570, 601 (Wyo. 1990) (Urbigkit, J., dissenting)). The district court did not use its discretion to decide the matter based on the peculiar facts and circumstances of this case. It failed to exercise any discretion. "Therein lies the rub in the instant case: the district court abused its discretion by not exercising it." *Id.*

[¶26] Moreover, a trial court is not at liberty to refuse to decide the issues on the evidence presented by the parties and instead insist on some other evidence, in this instance the agreement of the parties. *See Jones v. Young*, 2024 WY 64, ¶ 20, 550 P.3d 91, 95 (Wyo. 2024) (Kautz dissenting). The parties presented the evidence and arguments they thought were relevant and necessary to decide the issue. At that point, the trial court must rule, rather than require something else.[1] *Id.* (citing *Root v. Root*, 2003 WY 36, ¶ 16, 65 P.3d 41, 47 (Wyo. 2003).

---

[1] A court may certainly request additional briefing or clarification of the parties' positions. Those circumstances are not present in this instance.

[¶27] The district court's hope that these parties could come to agreement and displeasure with the parties' inability to cooperate in resolving this matter is understandable. However, the failure of the parties to reach agreement is not a sufficient basis to deny the motions. The essence of our adversarial process assumes there will not be agreement. Parties come to courts to settle conflicts, and the very purpose of the judicial system is to resolve those conflicts. If the parties could come to agreement, they likely would not be in court. This is especially true in this case where the record reveals two parties stubbornly entrenched in the rightness of their position although neither has behaved admirably during the course of this litigation and the events preceding it. At times, both appear to have failed to fully comply with the district court's orders.

[¶28] Even so, courts are called on to resolve the dispute the parties present. As the Connecticut Superior Court aptly stated, "[c]ourts, as institutions, have an obligation to hear cases properly brought before them." *Betensky v. Opcon Assocs., Inc.*, 738 A.2d 1171, 1176 (Conn. Super. Ct. 1999). "The judge assigned the case has a duty to hear and decide the case, however disagreeable that task might be." *Id.*, 1176 (citing *United States v. Will*, 449 U.S. 200, 213–16, 101 S. Ct. 471, 66 L. Ed. 2d 392 (1980)). "Chief Justice John Marshall long ago explained that this obligation lies at the heart of the judicial function." *Id.* "With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us." *Id.* (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L. Ed. 257 (1821)). As understandable as the difficulty the parties' refusal to cooperate with each other placed on the district court, the court cannot decline to exercise its discretion or decide the matter based on the evidence and arguments presented.

[¶29] Thus, we reverse the district court's order. Hale/Ringen have invited us to remand the matter to the district court with instructions to vacate the injunction. We decline to do so. Where injunctive relief is sought, it is the trial court that grants or denies it, based upon the facts—not the appellate court.[2] *Wilson*, ¶ 10, 77 P.3d at 416 (citing 43 C.J.S. Injunctions § 14, pp. 769, 773. *Crosby v. Watson*, 144 Colo. 216, 355 P.2d 958 (Colo. 1960); *Hansen v. Galiger*, 123 Mont. 101, 208 P.2d 1049 (Mont. 1949)). The same reasoning is applicable to a motion to vacate an injunction which also invokes the trial court's equitable discretion.

[¶30] We, therefore, remand this case to the district court to fully consider and decide Hale/Ringen's motion to modify or vacate the injunction. The court must consider all the relevant factors and equities surrounding the peculiar facts and circumstances of this case. Under Rule 60(b), the district court must consider whether applying the injunction prospectively is no longer equitable or if there are other equitable reasons that justify vacating the injunction. W.R.C.P. 60(b)(5) and (b)(6).

---

[2] This Court has determined the propriety of an injunction without remand to the district court on occasion. *See Winney*, ¶¶ 28–31, 539 P.3d at 85–86 (citations omitted). However, we have also noted our preference for district courts to determine the matter in the first instance. *Id.*, ¶ 31.

7

[¶31]  We note for the district court the granting of an injunction requires a weighing of the equities in the first place.  *Winney*, ¶ 27, 539 P.3d at 85–86 (citations omitted).  Accordingly, the power of a court acting in equity to modify a decree of injunctive relief is broad and flexible.  *New York State Ass'n for Retarded Child. Inc. v. Carey*, 706 F.2d 956, 967 (2d Cir. 1983).  A court may vacate or modify an injunction if it now has a better appreciation of the facts and circumstances surrounding the case given the course of events, the parties conduct since the original injunction, and if the injunction is no longer properly adapted to accomplishing its purpose.  *King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 418 F.2d 31, 35 (2d Cir. 1969) (citations omitted).  In that regard, we note for the district court the City conceded at oral argument before this Court that it has no intent to issue the building permit without demolition or disassembly of the storage building.  In any event, the only way to determine if the injunction should be modified is to consider the parties' evidence and arguments and then let the adversarial process do its job.

## CONCLUSION

[¶32]  Reversed and remanded for further proceedings consistent with this opinion.